```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

MICHAEL W. HINSON AND
CAROL C. HINSON                                           PLAINTIFFS

VS.                              CIVIL ACTION NO.   3:10CV456TSL-MTP

RANKIN COUNTY, MISSISSIPPI                                 DEFENDANT

                       MEMORANDUM OPINION AND ORDER

    This cause is before the court on the motion of defendant Rankin County, Mississippi for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Michael W. Hinson and Carol C. Hinson have responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

    On January 5, 2009, Richard Weaver, a neighbor of plaintiffs, filed a criminal affidavit against Michael Hinson, claiming that the previous day, he had discharged weapons in the direction of Weaver's property. Based on the affidavits, a warrant was issued for Michael Hinson's arrest on misdemeanor charges of disturbing the peace and simple assault. The same day, Rankin County Constable Barry Bean, accompanied by deputies with the Rankin County Sheriff's Department, went to plaintiffs' residence to arrest Michael Hinson pursuant to the warrant. Plaintiffs allege, and have testified that after Michael Hinson voluntarily exited

the residence and was handcuffed by Constable Bean, the sheriff's deputies entered the residence and began searching the residence, ostensibly for weapons. The officers seized two 9mm pistols, two .12 gauge shotguns, a .22 caliber long rifle, a .410 shotgun and a three foot long sword, all of which were returned to Carol Hinson a week later, on January 12, 2009. At Michael Hinson's initial appearance on January 6, 2009, bond was set at $50,000 on the simple assault charge and $1,000 for the disturbing the peace charge. According to the complaint, he remained in jail for eighteen days, until Carol Hinson sold the couple's real property in order to have money for the bond.

Plaintiffs filed the present action on August 17, 2010, alleging state and federal law claims relating to Michael Hinson's arrest and detention, and to the search of the residence and resulting seizure of the guns. Plaintiffs initially named as defendants Constable Bean, in his official and individual capacities; Rankin County Justice Court; Rankin County Sheriff's Department; Rankin County Sheriff Ronnie Pennington, in his individual and official capacities; and Rankin County. The court dismissed the Rankin County Justice Court and Rankin County Sheriff's Department by opinion entered May 19, 2011, and plaintiffs voluntarily dismissed their individual capacity claims against Constable Bean and Sheriff Pennington on July 7, 2011, leaving the official capacity claims against Sheriff Pennington

and Constable Bean, and against Rankin County[1] relating to the search of the residence and seizure of guns and to Michael Hinson's detention. Rankin County has moved for summary judgment on various grounds. The court concludes the motion is well taken on the following bases.

The County contends it is entitled to summary judgment on plaintiffs' claim under 42 U.S.C. § 1983 for alleged violation of their Fourth Amendment right to be free from unreasonable search and seizure because plaintiffs cannot prove that a policy, custom or practice of Rankin County that was adopted or maintained with objective deliberate indifference, proximately caused any deprivation of their constitutional rights.[2] In support of its motion, the County argues, first, that plaintiffs cannot establish any deprivation of their Fourth Amendment right to be free from illegal search and seizure, since a warrantless search of the residence was not unreasonable under the circumstances; and

---

[1] The official capacity claims against Constable Bean and Sheriff Pennington are the functional equivalent of claims against Rankin County. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

[2] Title 42 U.S.C. § 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

3

second, that even if plaintiffs could establish a Fourth Amendment violation, they cannot hold the County liable as they cannot establish that such violation was the result of official County policy. The court will assume for purposes of the motion that the deputies violated plaintiffs' constitutional rights when they undertook a warrantless search inside the residence after Michael Hinson had already been arrested outside the residence.³ However,

---

³ Although "'searches and seizures inside a home without a warrant are presumptively unreasonable,'" Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650, this presumption may be overcome when "'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment," Mincey v. Arizona, 437 U.S. 385, 394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). Here, Rankin County suggests a number of bases on which the deputies' actions might have been justified, including as a search incident to arrest, see United States v. Jackson, 596 F.3d 236, 241 (5th Cir. 2010) (recognizing that "an arrest warrant ... carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within" and further that "[a]ny arrest may be accompanied by a search 'incident to the arrest' of the immediate vicinity, limited to areas in which weapons might be found, regardless of probable cause or reasonable suspicion.") (internal quotations and citations omitted); based on a protective sweep rationale, see United States v. Watson, 273 F.3d 599, 603 (5th Cir. 2001) (as an incident to arrest, protective sweep may be made of suspect's house to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched," and may be made "even if the arrest is made near the door but outside the lodging" if the arresting officers "have reasonable grounds to believe that there are other persons present inside who might present a security risk") (citations omitted); on the basis of probable cause to believe that evidence of his crime might be found in the residence, see United States v. Rojas, 671 F.2d 159, 165 (5th Cir. 1982)("[P]robable cause to search exists when facts warrant a reasonable person to believe that the objects sought in connection with a crime will be found.") (citation omitted); and pursuant to

4

to recover against the County, plaintiff must prove such violation occurred pursuant to official county policy.

> A municipality or other local government may be liable under [Section 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (citing Monell, 436 U.S., at 665–683, 98 S. Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. See id., at 691, 98 S. Ct. 2018.
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691, 98 S. Ct. 2018; see id., at 694, 98 S. Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See ibid.; Pembaur, supra, at 480–481, 106 S. Ct. 1292; Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480, 106 S. Ct. 1292.

Connick v. Thompson, --- U.S. ----, 131 S. Ct. 1350, 1359-1360, 179 L. Ed. 2d 417 (2011) (additional citations omitted). Thus, in

---

a community caretaker rationale, see Gilmer v. Trowbridge, Civ. No. 3:08CV136TSL-JCS, 2009 WL 649692 (S.D. Miss. Mar. 10, 2009)("[A] compelling governmental interest supports warrantless entries where ... strict adherence to the warrant requirement would subject the community to a continuing and noxious disturbance ... for an extended period of time without serving any apparent purpose.") (citation omitted). The court need not determine whether the search was lawful under any of these proposed justifications in order to resolve the present motion.

5

order to hold the County liable, plaintiffs must establish their constitutional rights were violated as a result of the County's official policy.

Rankin County contends that plaintiffs have not identified an official policy which authorized the alleged constitutional violation, and that they further have not alleged or sought to prove a history of constitutional violations so persistent and widespread that official policy may be inferred.  The County observes that the only record evidence relating to the policies and practices of the County are the written policies of the Rankin County Sheriff's Department that set forth standards of conduct for all deputies; and the County submits that Policy No. 3.5 expressly prohibits unreasonable searches in violation of the Fourth Amendment by specifying the limited (and only) situations in which a warrantless search is constitutionally permissible, as follows:

> 1. Securing weapons or evidence of a crime incident to an arrest;
>
> 2. Assisting individuals under life-threatening situations;
>
> 3. Protecting the public from harm;
>
> 4. Searching for additional victims at crime scenes;
>
> 5. Protecting vital evidence;
>
> 6. Pursuing a perpetrator;
>
> 7. Searching vehicles based on probable cause that the suspects may contain contraband; and

> 8. Searching individuals under their voluntary, verbal or written consent.

The County further notes that Rankin County sheriff's deputies receive training with regard to these policies and procedures in compliance with standards established by the Mississippi Law Enforcement Officers Training Program of the State of Mississippi, which training covers warrantless search and seizure.

In response, plaintiffs argue that the County's policy is "intrinsically flawed" and violates the Fourth Amendment because it does not take into account surrounding circumstances, thus leaving it to the officers to make a subjective decision about whether or not a warrantless search is justified. They submit, for example, that the only situation covered in the policy that might arguably have been applicable in their circumstance was "1. Securing weapons or evidence of a crime incident to arrest"; but they contend that this policy was maintained with objective deliberate indifference to their constitutional rights as the policy failed to cover well-established limitations on the circumstances in which such a search/seizure is permissible, e.g., United States v. Mata, 517 F.3d 279, 285 (5th Cir. 2008) ("incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon").

Plaintiffs do not allege that the County's policy is unconstitutional because it directs constitutional violations.

7

Rather, their position is that it is unconstitutional because it contains insufficient information to prevent constitutional violations.  However, plaintiffs' position, that Policy 3.5 is constitutionally deficient, does not take into account that in addition to the written policy, deputies are provided specific training on the circumstances in which warrantless searches are constitutionally permissible.  The policy must be considered in conjunction with the training; and plaintiffs have not alleged, or sought to prove that the officers' training was inadequate.  In fact, in their response memorandum, plaintiffs declare, "Given the training the officers involved in the search and seizure as stated by Defendants together with this clearly stated policy, the officers were aware of the constrictions of the Fourth Amendment and the necessity for a search warrant."  If the officers were aware, based on their training and Policy 3.5, that a warrantless search was not permissible under the circumstances, then there is no apparent basis on which to hold the County liable for the officers' alleged violation of plaintiffs' constitutional rights.

Even if plaintiffs did claim the officers were not adequately trained, they have presented no proof to support such a claim.  In Connick, supra, the Supreme Court explained that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for

purposes of § 1983," but it cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S. Ct. at 1359. Where a policy is based on a municipality's failure to train, the plaintiff must prove such failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. This ordinarily means the plaintiff must prove "a pattern of similar constitutional violations by untrained employees." Id. 1360. The Court wrote:

> "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities ....
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately

9

>     chosen a training program that will cause violations of
>     constitutional rights.

Id. at 1360 (internal quotations and citations omitted).  In the case at bar, plaintiffs have offered no proof of any pattern of constitutional violations by untrained employees, nor otherwise suggested any basis for finding the County had notice that its officers' training program would result in constitutional violations.  Therefore, plaintiffs cannot prevail on their claim against the County for the alleged violation of their Fourth Amendment rights.

In addition to their claims against Rankin County relating to the search and seizure on January 5, 2009, plaintiffs also sued the County based on alleged violations of Michael Hinson's Fifth, Sixth and Fourteenth Amendment rights related to a January 12, 2009 hearing on contempt and setting of bond, and relating to Carol Hinson's securing a bond for Michael Hinson's release. Rankin County has moved for summary judgment on these claims, contending that Judge Shirley's rulings do not amount to official County policy.  See Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992) ("a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker"); see also Cunningham ex rel. Cunningham v. City of West Point Miss., 380 Fed. Appx. 419, 422, 2010 WL 2331987, 2 (5th Cir. 2010 ("no doubt" that judge's denial of bail was a judicial action).  Plaintiffs have not responded to the County's motion on

these claims, and in the court's view, have implicitly conceded that dismissal of these claims is in order.

Plaintiffs have likewise failed to respond to Rankin County's motion for dismissal of their state law claim for intentional infliction of emotional distress on the bases that it is untimely under the one-year statute of limitations established in the Mississippi Tort Claims Act (MTCA), see Miss. Code Ann. § 11-46-11, and that plaintiffs' claim falls under the law enforcement and discretionary function exemptions from the MTCA's waiver of sovereign immunity, see Miss. Code Ann. § 11-46-9(1)(c) & (d). As the claim is clearly untimely and subject to dismissal on that basis, the court need not address the additional bases urged by the County for dismissal of this claim.

Based on the foregoing, it is ordered that Rankin County's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of May, 2012.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE